overflowed and damaged each year. Thus, this condition warrants a court of equity to intervene and require construction of this ditch by a mandatory order.

It is a well established principle of equity that equity will intervene by injunction where the remedy at law is inadequate to avoid a multiplicity of suits, to restrain a continuous trespass, or to abate a nuisance.

The principle of law is well discussed in *McKiernann* v. *Grimm*, 31 Ohio App., 213, 165 N. E., 310; 14 Ohio Jurisprudence, 1037, Section 292.

The record before us well warrants a court in finding that the injuries complained of are reoccurring injuries, that the remedy at law for damages is inadequate, and that by reason thereof, and to prevent a multiplicity of suits, a mandatory injunction should issue in accordance with the prayer of the petition.

Entertaining these views, the finding and judgment of this court will be for the appellees.

*Decree for appellees.*

SHERICK, P. J., and MONTGOMERY, J., concur.

GROSSENBACHER *v.* THE STATE OF OHIO.

(Decided May 14, 1934.)

*Messrs. Hart, Drukenbrood & McHenry* and *Mr. Donald W. Seiple,* for plaintiff in error.

*Mr. George N. Graham,* prosecuting attorney, *Mr. A. C. L. Barthelmeh* and *Mr. Deane McLaughlin,* for defendant in error.

SHERICK, P. J. The plaintiff in error was indicted for the crime of incest. A jury having been waived, trial was had to the court, which found him guilty as charged. From this conviction error is prosecuted.

The evidence establishes the following facts: The accused, now a man of middle age, married one Rose Schneeberger about twenty years ago. At the time of this marriage, Rose Schneeberger was pregnant with child conceived by one other than the accused. Grossenbacher had knowledge of this fact. Thereafter, Rose Schneeberger Grossenbacher gave birth to a daughter, known as Anna Grossenbacher. It is proved, beyond a reasonable doubt, that the accused had sexual intercourse with Anna Grossenbacher on or about October 16, 1933.

The indictment found in this instance is grounded upon a violation of Section 13023, General Code, which reads as follows:

"Whoever, being nearer of kin by consanguinity or affinity than cousins, having knowledge of such relationship, commit adultery or fornication together, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The indictment was attacked by demurrer, which was overruled. Various motions were made at the beginning and throughout the trial to exclude all evidence offered by the state, and for judgment upon the proof made, all of which were determined adversely to the accused. The numerous errors complained of, however, may be consolidated into two questions, the first of which may be thus stated:

Does the evidence offered by the state prove, beyond

a reasonable doubt, that Ernest Grossenbacher was the step-father of Anna Grossenbacher?

We find that various lexicographers and courts have differed in defining the word "step-father". Bouvier says that such is generally understood as:

"The husband of one's mother by virtue of a marriage subsequent to that of which the person spoken. of is the offspring."

It is evident that this definition does not comprehend a bastard daughter that might have been given birth by the mother prior to her subsequent marriage, or a daughter conceived out of wedlock with another, but born after marriage, as in this instance.

No doubt the first definition is based upon the theory that a bastard can have no legal father from whom it may inherit. This rule we do not question. But it seems to us rather absurd to extend the theory and to hold that one of those unfortunates can have no legal step-father. The prefix "step", when used in conjunction with a degree of kinship, is repugnant to blood relationship; it is indicative of a relationship by affinity. It is recognized in this state that a bastard child may inherit from its mother and the precept of the Roman law is followed in recognizing the maternal relationship of children begotten in wedlock and out of wedlock. Both are related to the mother by consanguinity and inherit from her in equal shares, for both are her children. Perhaps, strictly speaking, a man who marries the mother of a bastard child does not become the step-father of such child. But when we consider the purpose of penal statutes prohibiting incest, which is to forbid inbreeding and preserve morality in the most important unit of society, which is, of course, the home, we must confess our inability to distinguish any appreciable difference between those children of the wife who were born in wedlock

and those born out of wedlock. Each is the blood child of the mother, and both may be members of the home created by the future husband of that mother. Surely the ethics of the people of this state would not approve of such licentious behavior of a husband with his wife's illegitimate daughter, when it has for many years frowned upon such practice with the wife's legal offspring.

We think that the court in *Lipham v. State,* 125 Ga., 52, 53 S. E., 817, 114 Am. St. Rep., 181, correctly recognized the true legislative purpose and intent which prompted the enactment of incest statutes. It was therein said:

"If a man marry the mother of an illegitimate daughter, and take the daughter into his care and custody, he becomes charged with a duty towards her. His disregard of morality and decency in having sexual intercourse with her is a crime transcending a mere misdemeanor. The act has all the elements which constitute incest. As incest it should be punished."

The second proposition advanced is made by this question, viz.:

Is Section 13023, General Code, which defines the crime of incest, violated if a step-father commits fornication with his step-daughter?

Counsel point out that incest was not an indictable offense at common law, and that in 1835 (33 Ohio Laws, 34) the Legislature of Ohio enacted that sexual intercourse between a step-father and a step-daughter, who had knowledge of their relationship, was incestuous. The statute at that time specifically set forth and named the classes and degrees of relationship by consanguinity and affinity which were comprehended by the act and included within its terms. It is now maintained that the new section, previously quoted, does not include the degree of relationship existing

between the accused and the one he debauched. If this be true, then unquestionably the Legislature in the enactment of the present section has had a relapse from the moral rectitude entertained by those whom they represent. The fact is that the present act enlarges the scope of the old statute, and includes within its bounds degrees of relationship, both by consanguinity and affinity, not previously embraced in the older law. It is now provided, without specifically naming each class, that any act of adultery or fornication committed with knowledge of such relationship, whether by blood or marriage, between those nearer of kin than cousins, shall be incestuous. The earlier section did not include and make criminal such licentious behavior between an uncle and niece, or an aunt and nephew, or a brother-in-law and sister-in-law. It should be clear that these degrees of relationship are nearer than that of cousins. It is so held in *State* v. *Brown,* 47 Ohio St., 102, 23 N. E., 747, 21 Am. St. Rep., 790, and *Stewart* v. *State,* 39 Ohio St., 152.

It is concluded in *Chinn* v. *State,* 47 Ohio St., 575, 26 N. E., 986, 11 L. R. A., 630, that:

"Affinity is the relationship which arises from marriage between one of the spouses and the blood-relations of the other, * * *."

Surely this definition comprehends relationship between a wife's bastard daughter, who is of her blood, and her subsequent husband. For, as said in the *Stewart case, supra,*

"Under this statute the degrees of relationship by affinity are to be determined in the same manner as degrees of relationship by consanguinity".

If the contention of the accused were tenable, it could be reasoned with equal force that those classes enumerated in the old section, such as a step-mother and step-son, or a brother and sister, are not included

within the present act, for the reason that they are not now directly named. By use of the general phrase, "nearer of kin by consanguinity or affinity than cousins", the Legislature intended to and did include all that class of relatives embraced therein without the necessity of specifically naming each class. The present act comprehends and includes a step-father and his wife's illegitimate daughter, who is his step-daughter. To otherwise construe this penal section would be to nullify it in the classes previously enumerated, but now generally included within the degree of kinship prescribed by the present act.

The judgment must be permitted to stand undisturbed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.